UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK PISZCZEK,

        Petitioner,

vs.

B. CURRY, Warden,

        Respondents.

No. C 07-3724 PJH (PR)

**ORDER DENYING HABEAS PETITION**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner filed a traverse in response. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

Petitioner was convicted of second degree murder in the Superior Court of San Bernardino County in 1986. He was sentenced to a term of fifteen years to life in state prison. On June 29, 2006, after a hearing before the Board of Parole Hearings ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole. Resp. Ex. D at 60-66. The Board based its decision upon characteristics of the offense, petitioner's escalating pattern of criminality, his disciplinary record in prison, and his failure to complete self-help drug and alcohol programs while in prison. *Id.*

Following the parole hearing, petitioner filed a petition for writ of habeas corpus in

the Superior Court of San Bernardino County, which denied the petition. Resp. Ex. F. Petitioner subsequently filed habeas petitions for relief in the state court of appeal and the state supreme court, both of which were summarily denied. Resp. Exs. G, H. Thereafter, petitioner filed this federal petition for a writ of habeas corpus.

**DISCUSSION**

**I.     Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision that is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

## II. Issues Presented

Petitioner contends that: (1) the Board violated his due process rights by denying parole based on the circumstances of his crime; (2) there was not "some evidence" to support the denial of parole, in violation of due process; (3) the Board violated his due process rights by not giving his case individualized consideration; and (4) the Board has a "no parole" policy.

Among other things, respondent contends that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions go to whether petitioner has any due process rights at all in connection with parole, and if he does, what those rights are, they will be addressed first.

### A. Respondent's Contentions

#### 1. Liberty Interest

Respondent contends that California law does not create a liberty interest in parole. However, the Ninth Circuit has held that it does. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006). Respondent's argument as to liberty

3

interest is without merit.

### 2. Due Process Protections

Respondent contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled by clearly-established Supreme Court authority are limited to notice, an opportunity to be heard, and a statement of reasons for denial. That is, respondent contends there is no due process right to have the decision supported by "some evidence." This position, however, has been rejected by the Ninth Circuit, which has held that the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d 895, 904 (9th Cir. 2002) (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

### B. Petitioner's Claims

#### 1. "Biggs Claim"

In a line of relatively recent cases, the Ninth Circuit has discussed the constitutionality of denying parole when the only basis for denial is the circumstances of the offense. *See Hayward v. Marshall*, 512 F.3d 536, (9th cir. 2008); *Irons v. Carey*, 505 F.3d 846, 852-54 (9th Cir. 2007); *Sass*, 461 F.3d at 1129; *Biggs v. Terhune*, 334 F.3d 910, 915-17 (9th Cir. 2003).

In *Biggs* the court said that it might violate due process if the Board were to continue to deny parole to a prisoner because of the facts of his or her offense and in the face of evidence of rehabilitation. 334 F.3d at 916-17. No legal rationale for this statement was provided, and it was unclear whether the court was suggesting that the continued denial of parole would be a new sort of due process violation or whether it was simply expressing the

thought that with the passage of time the nature of the offense could cease to be "some evidence" that the prisoner would be a danger if paroled. This ambiguity was helpfully cleared up in *Irons*, where the court clearly treated a "some evidence" claim as different from a "*Biggs* claim." *Irons*, 505 F.3d at 853-54. It appears, putting together the brief discussions in *Biggs* and *Irons*, that the court meant that at some point denial of parole based on long-ago and unchangeable factors, when overwhelmed with positive evidence of rehabilitation, would be fundamentally unfair and violate due process. As the dissenters from denial of rehearing en banc in *Irons* point out, in the Ninth Circuit what otherwise might be dictum is controlling authority if the issue was presented and decided, even if not strictly "necessary" to the decision. *Irons v. Carey*, 506 F.3d 951, 956 (9th Cir. Nov. 6, 2007) (dissent from denial of rehearing en banc) (citing and discussing *Barapind v. Enomoto*, 400 F.3d 744, 751 n. 8 (9th Cir.2005)). Depending on whether the discussion of dictum in the dissent from denial of rehearing en banc in *Irons* is correct, it thus may be that the Ninth Circuit has recognized that due process right, which for convenience will be referred to in this opinion as a "*Biggs* claim." Here, petitioner's first issue raises such a "*Biggs* claim," insofar as he contends that simply using the circumstances of his offense and prior criminal records as grounds for denial violates due process.

Petitioner's *Biggs* claim is not supported by the record. In addition to petitioner's commitment offense the Board provided other reasons for denying petitioner parole. Resp. Ex. D at 60-66. The Board found that petitioner had not "sufficiently participated in beneficial self-help programs" while in prison, especially Alcoholics Anonymous and Narcotics Anonymous. *Id.* at 63. The Board also suggested that petitioner take more advantage of the educational opportunities in prison. *Id.* at 66. Petitioner's record also contained evidence of unsuitable behavior while incarcerated, ranging from violations for smoking to more serious problems like a failure to report and embezzlement. *Id.* at 39-41, 63. Moreover, assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and in the face of extensive evidence of rehabilitation, and also assuming

5

arguendo that the right was violated in petitioner's case, petitioner still cannot obtain relief on this theory, because there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim." The state courts' rulings therefore could not be contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### 2. "Some Evidence" Claim

The Board's decision to deny petitioner parole was supported by "some evidence." The Board described the circumstances of the crime, based upon a "Life Prisoner Evaluation Report" prepared for the hearing. Resp. Ex. D at 12; Ex. C. The "Life Prisoner Evaluation Report" set forth the following summary of the crime:

> On November 29, 1986, at approximately 0421 hrs, Rialto Police Officers responded to a call regarding a stabbing at the trailer park at 350 South Willow Avenue, Space 84, in Rialto, CA. Upon arrival, Corporal R. Bitonti observed the victim, later identified by witnesses as Michael Eric Hartman, lying in a fetal position on the laundry room floor. He was observed to have blood covering his face and upper torso lying in a pool of thick blood. Rialto Fire Department paramedics arrived and immediately began cardiopulmonary resuscitation on the victim. Victim Hartman's shirt was removed, exposing his front torso area and having at least three (3) large stab wounds to the chest area. He was transported to Kaiser Hospital in Fontana where he was pronounced dead at 0506 hours. He was later found to have approximately fifteen (15) stab wounds, several located in the chest area. Rialto Police Corporal Bitonti interviewed the resident of the trailer, Cathy [sic] Davidson, girlfriend of the suspect, and Robert Judge, Davidson's son, regarding the incident. Ms. Davidson related that she had received a telephone call from suspect Piszczek at approximately 0300 hours, asking her if he could come over. Ms. Davidson told him that he could not because it was too late. Ms. Davidson indicated that Piszczek became very upset and hung up on her. Approximately thirty minutes later, Ms. Davidson was in bed when she heard a noise outside. Upon investigating, she saw Piszczek with a large hard tool smash out the window of the trailer. She saw him then run into the living room in a rage and jump on top of victim Hartman who was asleep on the couch. Ms. Davidson initially thought Piszczek was punching the victim, then saw blood everywhere. Realizing then that Piszczek was stabbing the victim, Ms. Davidson ran to a neighbor's home and called police. Witness Robert Judge was also interviewed by police. Judge stated that he was awakened by yelling coming from outside, recognizing the voice as Piszczek. He heard a crash, then saw Piszczek rush toward victim Hartman, asleep on the couch. Judge stated that he observed Piszczek jumped [sic] on top of the victim, and begin to stab him with a large knife. Judge described the attack as unprovoked.
>
> Both witnesses saw Piszczek flee from the trailer on foot. He was

> later apprehended in a field near the trailer park.
>
> Detective Woods interviewed Piszczek at which time he admitted to breaking into the trailer and stabbing the victim with a kitchen knife. He stated that he "knew that she was up to no good and I couldn't handle it." Piszczek was booked into the San Bernardino County jail and charged with Murder with the Use of a Dangerous Weapon (knife) and Burglary. [. . .]
>
> Inmate Piszczk stated that the Probation Officer's Report does not reflect an accurate account of what actually occurred. He advised that Kathy Davidson and he had been involved for approximately two (2) years. It was a regular occurrence for him to go to her trailer following his delivery of newspapers in the early morning. Piszczek stated that he called her that morning from a 7-11 convenience store approximately on [sic] block from Ms. Davidson's trailer. She told him not come over, then began arguing with Piszczek. He felt that this was "kinky", so he went to her trailer. Piszczek stated that they began arguing again at Ms. Davidson's window. He then heard a male voice say, "Tell the mother fucker to get out of here." Piszczek stated that he "hit the ceiling, grabbed a cutting tool, and broke the door down." He observed Ms. Davidson standing in the nude in the doorway, telling him, "It's not what you think." He pushed her, turned and saw a tall blond male rushing at him with something in his hand. Piszczek does not recall the actual act of stabbing the victim but stated, "it's clear to me what came out at the trial." Piszczek stated that Ms. Davidson's statement that the victim was asleep at the time of the attack conflicts with her son's statement that the victim was sitting on the edge of the sofa. Piszczek also pointed out that he sustained a cut to his thigh requiring five sutures. He claimed that the victim cut him with broken glass mug and [sic] which was later photographed and confiscated with blood on the edge of the glass and then supposedly destroyed. He also felt it was important to know that his defense took issue with the fact that the blanket that covered the victim while he was sleeping had no blood or cuts through the blanket.

Resp. Ex. C at 1-2.

Petitioner admitted that he had been "lodged in juvenile hall 10 times between 1961 and 1966" because of his abusive father. Resp. Ex. C at 3. He was arrested for Grand Theft Auto in 1966, but was released after a short detention. *Id.* As an adult, petitioner was arrested for assault and ended up serving thirty days in jail for disturbing the peace. Resp. Ex. D at 19. Petitioner also had various convictions for transporting to sell dangerous drugs and driving under the influence. *Id.* at 20-21. At the parole hearing, petitioner admitted to using drugs since he was 17 and that he had used "cocaine, marijuana, heroin, LSD, amphetamines, barbituates [and] anything [he] could get [his] hands on." *Id.* at 42. Petitioner participated in a prisoner-run self-help program called BRAG (Balance, Re-entry, Association and Group) but never took the opportunity to

7

1 participate in Alcoholics Anonymous or Narcotics Anonymous. *Id.* at 43-45. The Board
2 noted that it could not find any evidence that petitioner had obtained a GED. *Id.* at 36-37.
3 Petitioner had two serious rule violations while in prison, one for failing to report and the
4 other for embezzlement. *Id.* at 39-41. There were also five other violations of prison rules,
5 including smoking, being absent from assignment and being out-of-bounds. *Id.* at 41.
6 Finally, a district attorney from San Bernardino County opposed granting petitioner parole.
7 *Id.* at 53-54.

8      A parole board's decision satisfies the requirements of due process if "some
9 evidence" supports the decision. *Sass*, 461 F.3d at 1128-29 (adopting some evidence
10 standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55
11 (1985)). "To determine whether the some evidence standard is met 'does not require
12 examination of the entire record, independent assessment of the credibility of witnesses, or
13 weighing of the evidence. Instead, the relevant question is whether there is any evidence
14 in the record that could support the conclusion reached'" by the parole board. *Id.* at 1128
15 (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures
16 that 'the record is not so devoid of evidence that the findings of the . . . board were without
17 support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

18      In assessing whether the Board's denial of parole was supported by some evidence,
19 the court's "analysis is framed by the statutes and regulations governing parole suitability
20 determinations in the relevant state." *Irons*, 505 F.3d at 851 (citing *Biggs*, 334 F.3d at 915).
21 "Accordingly, here we must look to California law to determine the findings that are
22 necessary to deem a prisoner unsuitable for parole, and then must review the record in
23 order to determine whether the state court decision holding that these findings were
24 supported by 'some evidence' in [petitioner's] case constituted an unreasonable application
25 of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454." *Id.*

26      Under California law, "[t]he Board must determine whether a prisoner is presently
27 too dangerous to be deemed suitable for parole based on the 'circumstances tending to
28 show unsuitability' and the 'circumstances tending to show suitability' set forth in 15 Cal.

8

Code. Regs. § 2402(c)-(d)." *Id.* The circumstances tending to show that a prisoner is unsuitable include the following: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner;" (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others;" (4) commission of "sadistic sexual offenses;" (5) "a lengthy history of severe mental problems related to the offense;" and (6) "serious misconduct in prison or jail." 15 Cal. Code. Regs. § 2402(c). The circumstances tending to show that a prisoner is suitable for parole include the following: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner suffered from Battered Woman Syndrome at the time of committing the crime; (6) the prisoner lacks any significant history of violent crime; (7) the prisoner's present age reduces the risk of recidivism; (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release;" and (9) institutional activities "indicate an enhanced ability to function within the law upon release." 15 Cal. Code. Regs. § 2402(d).

      In rejecting petitioner's request for parole, the Board cited evidence of the "especially cruel and callous manner" in which petitioner committed the commitment offense. Resp. Ex. D at 60. This court notes that petitioner's commitment offense occurred 17 years before the 2006 parole hearing, slightly longer than the minimum 15-year term of his sentence. However, the very brutal nature of the crime in which petitioner stabbed the victim 15 times, it was reasonable for the Board to continue to cite the commitment offense as evidence of petitioner's current danger to society. *Id.* at 60-61; Resp. Ex. B at 6. Also, petitioner's commitment offense came as the climax to "an escalating pattern of criminal conduct . . . including H & S violations, DUI violations and driving under the influence," which could also reasonably indicate to the Board a risk that petitioner had become a serious and violent offender who should not be released. Resp. Ex. D at 63. The Board found further evidence of petitioner's unsuitability for parole in his unwillingness to

9

participate in prison-sponsored drug and alcohol rehabilitation programs and lack of any post-probation relapse prevention plan.  Given petitioner's extensive use of drugs prior to entering prison, petitioner's lack of drug treatment in prison reasonably indicated a significant risk that if released petitioner would relapse into drug abuse and the concomitant criminal and violent behavior he had engaged in previously.  Petitioner's misconduct in prison, which included two serious offenses and several minor violations, also provided evidence that petitioner remained a danger to society.  *Id.* at 63-64.

Considering the "exceptionally callous disregard for human suffering" involved in petitioner's commitment offense, petitioner's misconduct while incarcerated, and his refusal to engage in drug treatment, it was reasonable for the Board to find that petitioner continued to present a danger to society and deny him parole.  *Id.* at 61.  Consequently, the denial of parole did not violate petitioner's right to due process, and the state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 3. "Individualized Consideration" Claim

Petitioner also claims that the Board failed to provide individualized consideration of his suitability for parole, and incorrectly used the "some evidence" standard of judicial review to deny him parole.  A review of the record establishes that this was not the case.  At petitioner's hearing, the Board engaged petitioner in a thorough discussion of his early life, including the abuse he suffered at the hands of his father.  Resp. Ex. D at 18-26.  The Board also read letters in support of petitioner's parole, as well as examined petitioner's educational history, work history in prison and psychiatric report.  *Id.* at 27-52.  Petitioner's attorney also spoke at the hearing.  *Id.* at 54-59.  Upon giving its decision, the Board cited specific factors, such as the commitment offense and petitioner's lack of self-help, as reasons why petitioner was not suitable for parole.  *Id.* at 60-64.  Petitioner received individualized consideration and is not entitled to habeas relief on this claim.

### 4. "No Parole Policy" Claim

The instant petition also makes a reference to an alleged Board "policy" to deny

10

parole to all life inmates. It is not clear whether petitioner means to raise this as a separate claim. To the extent he does, such a claim was not presented to the California Supreme Court and therefore has not been exhausted. Resp. Ex. H. Nevertheless, even considered on its merits, the claim fails because, as discussed above, parole was denied because of petitioner's commitment offense, his behavior while incarcerated and his lack of participation in self-help programs. As such, the record demonstrates that the denial of parole in his case was done based on petitioner's individual circumstances of petitioner's case, and not based on any blanket policy. Therefore, habeas relief is not warranted on this claim.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 27, 2009

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.07\piszczek724.rul.wpd